And that is Wal-Mart v. Texas Alcoholic Beverage Commission and the Texas Package Stores Association. And for the Texas Package Stores, we'll hear from Mr. Waldrop. May it please the Court, I'm Alan Waldrop on behalf of the Texas Package Stores Association, and we very much appreciate being before you today. As you know, this is an interlocutory appeal of our motion to the denial of the TPSA's motion to intervene in this case. And it's a very important motion for a lot of people in the state of Texas. The case, the underlying case, the main case, involves... Why is it important for the people of the state of Texas? The state government is representing them in this matter. Actually, the state government is not representing them in this matter, Your Honor, and that's an important thing for this Court to note and an important thing in this Court's jurisprudence on this point. The defendant in this case is the Texas Alcoholic Beverage Commission and three of its commissioners. The defendant is not the state of Texas, as the case is currently postured. And that's a critically important point and one that the District Court just drove past. Say that again now. Why are they not representative of the state of Texas as far as their little niche of regulation is concerned? Well, first of all, they aren't the state of Texas. They are an agency, a commission of the state of Texas that they are not the sovereign, Your Honor. But as a practical matter, the real answer to your question is this. The TABC is the regulating commission, the regulator that is empowered to enforce the regulations of the state of Texas under the statutory construct. It is not the state and it does not have the same broad interest as the state. It is the regulator. And in this situation, the permit holders, the TPSA— It's regulating state laws, I assume. I'm sorry? It's regulating state laws or it's implementing state policies as the legislature may have directed. Yes, absolutely. It is doing that. But what it's not doing— Does our case law in Intergy say that if it's not the sovereign that we don't assume that the representation is adequate? Do we have binding case law that says that? Absolutely, from April of this year. I think that was a friendly question. It was indeed. There is binding and that is exactly why I did mention that under this court's jurisprudence, the distinction is critical. And that jurisprudence is very recent and crucial in this deal. It's the Intergy case, as Judge Elrod pointed out. And in Intergy, the three-judge panel of this court, in fact, held that where it's a state agency that is involved and not the state acting as a sovereign, then that eliminates one of the presumptions. Obviously, I'm not suggesting that, but I'm just saying that the state of Texas' interests seem to be represented and that it would be important for you to distinguish how it is important for you to jump in and to represent essentially those same interests. Or maybe they are not representing all your interests, and that's what I want to hear about. Why they are not. Yes. As a matter of fact, we don't have, the TPSA does not have the same interest as the state of Texas generally, and I didn't mean to suggest that. What I wanted to suggest to the court that this case is important for the members of the TPSA and for all the package store permit holders in the state of Texas, which are numbering the thousands. We have interests of our own in the statutory framework. We are the, and I will pick up a phrase from Judge Elrod from the fairly recent Texas versus United States opinion, where the court said, when you're dealing with the intended beneficiaries of a law, they have an interest and a stake in the litigation. And that is precisely what the members of the TPSA are. We are the intended beneficiaries of the statutory framework that is under attack. We are the ones that, and it's graphically represented in the pleadings in this case, in Wal-Mart's pleadings. Wal-Mart, the very premise of this whole lawsuit by Wal-Mart is to say that this statutory structure is protectionist, and it's protectionist in violation of the Constitution. Well, that begs the question, protectionist of who? It's not protectionist of the TABC. If it's protectionist in the way they plead this case, Wal-Mart says it is protectionist of the current liquor package store permit holders, the P permit holders in the state of Texas, which are our members, the TPSA members. And so we are the people, we are the people that Wal-Mart says, these are our direct competitors. They plead that, that the TPSA members are the direct competitors. It's the direct competitors that they're going after in this lawsuit. And what Wal-Mart wants to do and wants to suggest to the court ought to be done is that it is in the interest of justice for Wal-Mart to attack decades old statutory structure for the regulation of alcohol and liquor in Texas for its benefit, and it gets to be heard in that major lawsuit. But it gets to keep out its direct competitors, the people that are actually the ones with the direct interest in that statutory structure, and they don't get to get heard. Okay, if that was so important to you, why did you wait so long to get involved in it? We did not wait so long to get involved in the case. Well, you waited until after a motion to dismiss was filed. I mean, you should have known from the beginning the interests that you are now extolling were present then. The generalized interests that you've articulated were present then. We did. We absolutely knew that there was some interest in this lawsuit. But here's the real issue with the motion to dismiss. The law is not that you leap into the case just as soon as you know that there's a case out there you may have interest in. The law is, in this area, is very clear. There should be an intervention when you know your interests are not being protected, and only at that point. Otherwise, it's a waste. And the calculation was made, which I think is absolutely a correct one, that when the state negotiated for a lengthy time in which to file and have considered a motion to dismiss, a 12b6 motion, there was nothing happening in this case that was going to affect our protectable interest until that motion was disposed of. Okay. And why did that change the scene? I'm sorry? Why did that change the scene as far as your interests are concerned, given the fact that you say that this is a hugely important matter from the outset? What changed to make it even greater that you now are compelled to intervene when earlier the same interest did not prompt that? Yes, Your Honor. Had the motion to dismiss been granted, the case would have been over and our interests protected. Done. The fact that the motion to dismiss was not granted and the case was going to then therefore move forward on the Equal Protection Complaints and on the Commerce Clause Complaints, that's when we knew we needed to get into this case. But you can't claim, or can you, that that's a basis for intervention, that you can sit back and wait until the case gets going badly for you and you've got a few adverse rulings and you decide to intervene then. You absolutely can wait until it's clear that your interests are not being protected, and that has happened in dozens of reported cases. What changed from the ability of the State of Texas to protect your interests at the time the lawsuit was filed and the time the motion to dismiss was ruled upon? It didn't have anything to do with the ability of the TABC. And bear in mind, it's not the State of Texas, Your Honor. It is the TABC who is the defendant in this case. The TABC no more adequately represented our interests from day one than they did after the motion to dismiss was ruled on. Maybe I'm missing something, but doesn't that concede that you should have filed it earlier? No, absolutely not. Our point about the motion to dismiss is this. It's that we did not need to get into the case if that motion to dismiss was going to be granted. It would have been a waste of time and judicial resources for us to intervene, to sit and wait while the motion to dismiss is being considered and ruled on. Any evidence that that was, in fact, your motive from the outset that you were waiting on the motion to dismiss to be ruled upon? When you say evidence, evidence in the form of an affidavit or something of that sort? No, Your Honor. Well, a form of affidavit, a form of email, a form of some kind of explanation as to why you were not intervening. No, Your Honor. Because, I mean, what you have described is like this could be cataclysmic as far as your client is concerned. And that existed, it was cataclysmic the day the case was filed, and I guess the detonation occurred whenever the motion to dismiss was denied. And I just can't see how it changed how your interest and your awareness, I mean, obviously you were aware of the importance of this case from the beginning. You said that. Absolutely, we were aware of it. The point of it is that you don't move to intervene in cases like this until there is a need to do so. And that's what the case law holds. And why is the state of Texas, excuse me, why is the TABC, is that what it is? T-A-B-C, Your Honor. T-A-B-C. Why is it not representing your interests now as opposed to at the time the case was filed? Under this Court's established precedent that started with Brumfield, this Court has recognized that governmental entities, particularly where they are the regulators and we are the regulated, governmental entities do have a broader set of interests and they do not have identical interests to the private citizens who are the beneficiaries of the law. That's Brumfield. That was re-articulated in Texas. And in that kind of situation, under the Trobovich case out of the U.S. Supreme Court and under this Court's established precedent following that case, it is a minimal standard, minimal standard to show inadequacy of representation. Now, with all that being… I think it would help us contextualize this to give us an example of some practical way that the state's interest is not, that they're not adequately representing. There is a very good example. Yes. There is a very good example in this particular case that has already appeared. And by the way, it's not that it has to, you have to show, that we have to show there is an example. It's, the standard is there might be inadequate representation. But there already is a great example. And that is the hotel exemption. One of the things that, in fact, it is the heart of this case that Walmart is saying the public, there is a ban in Texas right now against a publicly held corporation having a package store permit. That is the primary statute that is under attack because that's the statute that sets up an absolute bar to Walmart having a P permit. Now then, there is also a statute in Texas that gives hotels, even if they're publicly held hotels, publicly held entities, the ability, an exemption for a package store. That's basically for the many bars? Is that basically how it operates? Actually not. What it was originally, it turns out it's archaic and a historical accident and it's still in the law. But what it originally looks like it was intended to do was to allow hotels to actually have, to sell, to sell liquor by the bottle in the hotel decades ago. In fact, there are no current P permit holders that are also hotels. But my point about it is this, is an example of, just an enormous example. The TPSA has no interest in defending the hotel exemption. None. We think it's archaic and anachronistic. It should have played no role in the litigation of this case. Whereas the TABC has to defend the entire structure and is defending the entire structure. And it is an enormous hole in the defense of this case. Have they taken a position on that one way or the other in this litigation? They have. And the TABC is defending that exemption. And that is one of the primary points in this case. Do they concede that it's archaic as you have alleged? I'm sorry? Do they concede that it's an archaic act as you have alleged? They haven't yet, Your Honor. I don't know what position they're going to take on that because we haven't quite got that far. On the timeliness, given that the district court appears to have made no conclusion on the timeliness for intervention as a matter of right, what is our standard of review for the timeliness and would we need to remand? Yeah, it's a very interesting point. Its standard of review is de novo and under Rule 24A, intervention by right, this court does not need to remand. It's a de novo review. The court can make the decision on that point as a matter of law that the court believes needs to be made. That would be different for permissive interview under B. But permissive is different than right. Different from that. And they have to be analyzed differently. Completely differently, even though the timeliness is in each one, timeliness is completely different under each. What alternative would you argue for remand on that issue? If the court is unconvinced that we are entitled to intervention as a matter of right under 24A, then we absolutely would ask the court as the alternative that we are entitled to a remand for reconsideration of permissive intervention under B. But under A, is it right? Pam, would you give each side three more minutes? Sorry. Under A, as a matter of right, what if the facts are not there for us to decide the timeliness part of as of right? Actually, under A, you take the record the way it is now and you review it unless this court believes it needs a more developed record, which I don't believe it does for A, because here's why. Under timeliness, Your Honor, it's not why we're waiting that matters. That is not a legally relevant inquiry. For timeliness under A, under 24A, it is what is the prejudice to the existing parties in the case from the date that our interest became significant. And that doesn't matter whether it's the beginning of the case. They have to show prejudice? They have to show it. And the TABC has not taken a position? Has not taken a position. And that's the point here. You don't remand here. If you find that prejudice has not been shown, then you rule and you say prejudice has not been shown. You don't send it back to say, well, take another stab at it and try to show prejudice. And what you will find if you look at this record is there has been no prejudice shown. None. And that's what I would challenge the Court to find. If between the gap of August 7, when the State answered and this case started, and November 18, that time period is the relevant time period for timeliness. What prejudice occurred to Wal-Mart during that time period? And there is none on this record. I thought that they argued that they had worked out several agreements in terms of confidentiality agreements and the kind of material that they would furnish that now they would have to renegotiate with you if they're renegotiating with a competitor. That counts as a friendly question, Your Honor, and here's why. Yeah, they agreed to a protective order. And if you read in their briefing, they say, oh, we negotiated, renegotiated, made it sound like, oh, my God, this was something else, this agreed protective order. You know what this agreed protective order is? It is the form protective order for the Western District of Texas that was agreed to. It has no changes with respect to the confidentiality provisions. It changes one word with respect to how you challenge a designation, and it adds a few sentences with respect to a clawback procedure at the end so there's no waiver. That's the incredible prejudice. They'd have to go back and reenter a new form order from the Western District of Texas. And that's why I say the point about that, Your Honor, is to say please read the briefing in this case with a close eye because you will find things like that throughout the briefing. There was a scheduling order. There had been one round, an initial round of discovery propounded, hadn't even been responded to yet. No depositions taken. Not one document had been produced in the case. No expert reports were due for two or three, four months. Nothing had been done in this case. Okay, we have questions here. I'm going to give you about one minute if you want to look over your notes and see if there's some point that you want to make. Well, I appreciate the questions, actually. It does help me do this. I will take a quick look, however. I would like to say one thing, make one point here, and thank you for the opportunity. This court has, as far as whether we have an interest that's protectable here, this court has already decided that. It was decided this year. It was decided in Cooper v. TABC. The court decided as a matter of law that TPSA actually had Article III standing with respect to this statutory structure. And frankly, between that and Judge Elrod's opinion in the Texas v. United States case, the jurisprudence on whether we get into this case is done. It is standard operating procedure since decades ago that in this kind of litigation, trade associations that are the beneficiaries of the statutory framework that is being challenged get to get in and be heard. The New York case, this court's cases . . . All right, let me ask you just one question. The general principle is that economic interests alone are not satisfactory to require intervention. To what extent are you motivated solely by economic interests, and is that relevant? It's relevant. But, it is not relevant in this sense. Just simply stating that economic interests alone are not sufficient is really not what the standard is. That language comes out of a case where the court was . . . the Knopsey case . . . where probably the court was a little bit . . . using the terminology a little bit generally there. It's because in all of the cases where intervention is allowed, an economic interest component is a big deal. It matters. What I would suggest to the court is what they were saying in Knopsey, where that language was used, was really a distinction between direct economic interest and indirect. Because in Knopsey, what you had is . . . you had parties to a contract, commercial contract for the sale of energy. Those parties were in the case. That's what was being argued about, that contract. And then, citizens who were buying from one of those contracting parties wanted to intervene. And, the court said that economic interest, the interest in the pricing or the rates that you're going to get under their contract, is not enough. Okay. My question. Assuming that that is the law, how is that relevant to your interest now? Our interest is direct. We don't have the attenuated interest. We're not the consumers, for example. So, you admit a purely economic interest, but that it is a direct economic interest. We do not admit a purely economic interest. We have an economic interest. What are the interests other than economic? We have an interest in having the P permits under the current process, under the current structure. And, the key component of that is, we have P permits without publicly traded corporations having them. That is a huge, huge benefit. But, that's not an economic benefit. Well, it's both. It's a combined benefit. But, the main point I'd like to say is, it is standard operating procedure for trade associations in this country to be, in these cases, to be heard. Thank you, Mr. Walter. Mr. Kaplan, representing Walmart. Thank you. May it please the Court. There are three independent grounds on which this Court should affirm the District Court. First, the Court properly can affirm on adequacy grounds alone, the State of Texas, through the TABC and its commissioners, sued in their official capacities, are acting in a sovereign capacity and are vigorously defending the challenge statutes. The State has the same ultimate objective as the TPSA, which is to preserve these challenge statutes, to preserve the status quo, and there is no adversity between them. Second, the District Court correctly determined the TPSA does not have a legally sufficient interest. And third, the Court did not abuse its discretion, and that is the correct standard of review, Your Honor, in finding that the motion to intervene was untimely. But, it didn't find that on the intervention as a matter of right. The Court's order, Your Honor, I disagree. The Court's order addressed three elements in a sequence. It first addressed whether there was a sufficient interest, then adequacy, and then addressed timeliness, which is a factor both for intervention as of right and permissive intervention. And there's no requirement the Court addressed the same standard twice. Was the Court at a disadvantage, a tremendous disadvantage, because it didn't have the benefit of our opinions in Cooper, which said there's a direct economic interest here, not an indirect one. And it also didn't have the advantage of our opinion in Intergy, that says that we don't assume that these agencies are sovereigns. And so the Court didn't get to address those things, and it's not the Court's fault that we hadn't issued those opinions yet. But it appears that the Court made errors because it didn't have the benefit of our opinions in that area. It's certainly true, Your Honor, that Cooper, too, was decided after we filed our response brief, and that the Intergy case was decided even after the TPSA filed its reply brief. Although I would like to suggest to the Court today that the district court's opinion is nonetheless correct in both respects, both with respect to Cooper and Intergy. I'll start with adequacy and the Intergy issue, Your Honor. Both of this Court's presumptions of adequacy apply in this case. The government presumption applies. I think the TPSA respectfully is over-reading the footnote in Intergy. The Intergy footnote that makes this distinction says the government presumption doesn't apply when it's not a matter of a sovereign interest. And it quotes the language from this Court's en banc decision in Edwards v. City of Houston. And what the Court says is that the government presumption is restricted, however, to those suits involving matters of sovereign interest. In the Edwards case, the en banc court held the presumption didn't apply because the City of Houston was functioning as employer, not as sovereign, which makes sense. In the Intergy case, the government there was a reverse FOIA case. The government is acting as the record keeper in a dispute between the Sierra Club, essentially, and Intergy. The government is not acting in a sovereign capacity. Here, however, where there's a challenge to the constitutionality of statutes passed by the legislature, the government is acting in a quintessential sovereign capacity. The Attorney General of the State of Texas is representing the commissioners who were sued in their official capacity, and that is a sovereign act. You know, in Texas v. Doe, we noted that it was not a heavy burden to establish intervention as a matter of right. And that the party's right to argue for those benefits that they might not even be entitled to as a matter of law was independent enough that they should have the right to come on their own rather than be represented by the United States, which is a very formidable and vigorous advocate. Why shouldn't these parties have the same right with regard to this hotel exemption and other things that they may have a more nuanced approach that supports their competitive position that the state may not have? In Texas, Your Honor, and in the rest of this court's cases where the court has found the adequacy presumption rebutted are situations in which there is adversity. In Texas v. United States, in your opinion for the court, you found that there was direct adversity. There was a quote, directly adverse, because in that case, the federal government made an argument to try and defeat the state's standing that the states didn't have to issue driver's licenses. And the court made that point expressly, that that was a direct conflict. There was direct adversity. But even if there hadn't been, I think it said that it was already that they had an independent thing to try to, even if they hadn't actively said we're not going to go for these driver's licenses as a matter of right, I mean these benefits as a matter of right. No, Your Honor, I think on interest, the court had already found there was a sufficient interest. And the interest, unlike this case, was that the interveners there, as a direct result of the outcome of the case, they were either going to be subject to deportation or not. Why isn't the hotel exemption, and whether it's pushed for or not, a point where the TABC could diverge from the industry participants? Your Honor, with respect to the hotel exception, the TPSA's argument is that it can make a more focused defense, because it doesn't have to argue or defend the hotel exception. But a more focused defense is not a different ultimate objective. And that is the standard, a different ultimate objective. And it certainly is not adversity. It is like in the Hopwood case, Your Honor, where the proposed interveners in that case said, well, the state and the university have broad objectives that they need to defend with respect to admissions policies and serve various constituencies. Whereas we, the interveners, we want to come in and just defend the narrow interest of remedying past discrimination. And this court said that was insufficient because they had the same ultimate objective. And on this point, on the hotel exception, we cited a case from the Fourth Circuit called Stewart v. Huff. And just of historical interest, when this court adopted the same ultimate interest test, it adopted it from the Fourth Circuit. And the Fourth Circuit's case, and that is in the Duncanville case from this court. In the Fourth Circuit's case in Stewart v. Huff, Judge Wilkinson, writing for the panel, in a very similar case challenging abortion restrictions, the court says that the appellant's argument, the intervener's, is that there are a class of beneficiaries protected by the act. And that their interests are stronger and more specific. It says, but stronger and more specific interests do not adverse interests make. And they surely cannot be enough to establish inadequacy. And on the hotel exception, Your Honor, this is not a hotel case. Walmart doesn't own hotels, doesn't operate hotels. We are not challenging the constitutionality of the hotel exception. We are challenging the rule to which it is the exception. Its only relevance is to the extent it bears on the legislature's intent in excluding public corporations. Can you address the Cooper point, please? I'm sorry, Your Honor? The Cooper point. Yes. Why isn't there a direct stake in the outcome of the case? It seems it's the same statute. Our court has said it has a direct stake in the outcome. Yes, Your Honor. In my analogy, they have a direct stake in this case. In Cooper 2, the court addressed the question of Article 3 injury in fact for purposes of a Rule 60B motion. The inquiry for Article 3 standing is not the same as the inquiry for Rule 24 interest. Rule 24 interest is lighter. Well, I don't think that's quite right. It's exactly easier to meet. I don't think that's quite right, Your Honor. I think in some cases it certainly is. In some cases it's not. I think in actuality the standards are different. And what consistently you see through this court's case is about interest. It's an interest of a nature that is quite different than the interest here. Voting rights in Finch in the Lewak v. Bernie case. Property rights in Diaz and in Espy. The right to equal protection in government employment. That's Edwards in the black firefighters case. Due process interests in child rearing and obtaining government benefits. And that's the Brumfeld case. Avoiding deportation as a direct result of the litigation in Texas v. United States. In all of these cases, the judgment in the litigation would have a direct, concrete impact on the interveners. The outcome was either they would get a government benefit or they would not. So is the result of the litigation. The TPSA's interest here is not as direct or concrete as the interest of an alien seeking deportation or of a parent trying to get a voucher for their child. It is an indirect effect based on secondary market consequences. What it seeks in this case. I don't understand how you can say that given Cooper. Which says the statute entitles members of an industry to reduced competition. That is what they have. They have reduced competition. Whether that's good or bad in the grand scheme of free markets is not our quest today. They have reduced competition. That is something to have. Yes. Why isn't that just as protectable? I mean, the fact that it's not constitutional of these other things. But some of these people didn't even have standing in fact. And this is standing in fact on reduced competition. Your Honor, I think what you're alluding to about the people that didn't have standing in fact is in Texas where the court talks about the black firefighters case and the Edwards case. Where you have employees who don't yet. They couldn't satisfy Article 3 standing because they don't yet have a ripe interest. It probably couldn't satisfy Article 3 standing. Absolutely. But the difference, Your Honor, is as the direct result of that litigation as the court finds, they're either going to be eligible or not going to be eligible solely on account of their race for a future promotion. And so even though they don't satisfy ripeness or imminency concerns for Article 3, they have a protectable interest for purposes of Rule 24. That's not the case here because this court has said that a mere economic interest is insufficient for intervention. And that's the en banc decision in NOPC. And there is no question, Judge Jolly, that the interest here is purely economic. And they were unabashed about that in the district court. They told the district court that if Wal-Mart's relief is granted, that it will unavoidably harm the business and substantial investments of the TPSA's members. They said that the TPSA's members stand to lose substantial revenues. and long-term investments and would be placed at a competitive disadvantage. It is a pure economic interest that is insufficient for intervention and is distinguishable from all of the prior cases that involve, as a direct result of the litigation, an impact to a property right or a protected constitutional right in a way that is very different from secondary market effects that cause economic consequences. But it's not secondary market effects. It's direct market effects. They're going to lose their property rights, so to speak, of the ability to restrain competition. But they have no such property right, Your Honor. As a direct result of this litigation, they will not lose any rights under their permits. No aspect of their operations has to change. Why is that different in Cooper? Because, again, the Cooper inquiry is different, Your Honor. It is an Article III standing question. It doesn't address the Rule 24 inquiry. And I think, although it's a case that's not cited in our briefs, Your Honor, there is an opinion from Judge Posner that I would cite to the Court for the Seventh Circuit where Judge Posner makes this point, which is that the Rule 24 standard is different and that it can be used to police the outer bounds of Article III standing. But it's supposed to be lenient. This is supposed to be lenient. I think it's different, Your Honor. It's a different standard. Lenient. You agree it's supposed to be lenient in the abstract. As a policy goal, the Court has said it should be liberally construed. But nonetheless, there are elements that have to be established, and including that it can't be a mere— 60B is not supposed to be lenient. I'm sorry, Your Honor? Whereas Rule 60 is not supposed to be lenient. This is supposed to be lenient. Well, I don't think that's quite— I mean, one's guarding the gateway in and one is at the end and letting people come in. But the Article III injury and facts standard, Your Honor, is not supposed to be lenient. But it is. The Supreme Court, for example, in the environmental cases, in Friends of the Earth v. Laidlaw, has said that if you put in an affidavit that you recreate at a park or you used to fish at that park as a boy and you like to view that park, you have standing to come in and file a citizen suit under the Clean Water Act. No one would think that interest, that aesthetic interest in the preservation of the environmental quality is sufficient to intervene in the case. But if the court equates, which it has never done, the court has never squarely held, that Article III standing automatically gives you the right to intervene under Rule 24. And I think that would be unwise for that reason. There's a whole class of people that might be able to satisfy the Article III test that would necessarily satisfy Rule 24 when they don't have a significant, protectable, direct interest as in this case. Can you help us with the prejudice? On time witness, Your Honor? Yes. The prejudice in this case, Your Honor, is twofold. First, there was a document production that was made five days after the TPSA's motion to intervene was filed. And as the court, I think, would certainly recognize that documents have to be reviewed and prepared in advance of the date that they were produced. And the production in this case included substantial volumes of confidential business information, including Wal-Mart's pricing documents for liquor, its business strategy documents. And when— You said these have already been produced? They were produced five days after the TABC's filed its motion to intervene. They'd already been reviewed in order to ready them for production. And it is the Foreign Protective Order in this case— But how does that prejudice you, the fact that you've already done that? They have to be re-reviewed, Your Honor, and re-designated for confidentiality because now they're not in the hands of the regulator. They're in the hands of a competitor. And that's aspect number one of prejudice. Is that just what you were saying, or have you made a showing of that? Well, we asserted it to the district court, Your Honor. It wasn't challenged below. It's only been challenged for the first time on appeal. The district court also—we presented the district court with argument with respect to the orderly progression of the case. In a case like this, contention-related discovery was critical. We needed to know what the state's arguments were for why the statute's passed the rational basis test and what the basis is for the dormant commerce clause challenge. We served contention interrogatories early in discovery, and it was on the basis of those contention interrogatories that our expert prepared an econometric study and did substantial work on that study. If the TPSA would have moved to intervene earlier, we would have had their contentions and could have tailored that work in response to that. The order says that you've just done essentially nothing in terms of producing any documents or engaging in any kind of discovery. So, I mean, are you just building a mountain out of just a small amount that you've done? No, Your Honor. There was prejudice in both of those ways, and I think that it's a straw man to suggest that— If they do intervene or allow an intervention, what have you got to go back and undo? So all of the documents that have been produced, and there are several thousand documents that have been produced, including voluminous databases, would need to be re-reviewed to determine the appropriate marking of those documents under the protective order to ensure that proprietary business information is not in the hands of a competitor. One. Two, if they do have a unique argument, which they— There would be probably a limited number of those thousands of documents that have been produced that would have to be re-reviewed. Many of them, I'm sure, have nothing to do with revealing secrets. Well, there's a substantial amount of discovery surrounding Walmart's pricing. One of the state's arguments is that Walmart would reduce pricing, and so there's voluminous pricing data that's been produced and business strategy documents related to where— Voluminous. I mean, that's—I mean, that's—he says nothing. You say voluminous, so— Your Honor— I mean, I'm just left wandering in the wilderness. Well, you—the counsel suggested that we can't show incredible prejudice. Of course, incredible prejudice is not the standard. The standard is prejudice. It doesn't even have to be incurable prejudice. It is simply prejudice. The district court did not abuse its discretion, and abuse of discretion is the correct standard, Your Honor, because the court cited the Stallworth factors, which is all this court has said is required for the deferential standard of review to apply. And if there were any doubt, Judge Elrod, about whether the finding on timeliness was made in the context of permissive or mandatory intervention, I think that doubt was eliminated when the district court entered its order denying the subsequent motion to intervene filed by Gabriels. And in that— I mean, have the time limits for completing discovery been set up in the scheduling order? Yes, Your Honor. So from your point of view, if the package store group is allowed to intervene, how long will the trial be delayed? Your Honor, our expert report was due in January, and it was done on the basis of the contention interrogatories that we had received earlier. The state—the TPSA says in its motion that the contention interrogatories weren't received until after it filed its brief. That's incorrect. What they're citing to are the state's amended interrogatory responses that asserted various interests. Those interrogatory responses, the original version of which, were served in early October, so more than six weeks before they moved to intervene, and we can supplement the record on that point. But our expert worked on the basis of that contention discovery that was received, and he— But there were months. There were a couple of months that he could have held up or said—anticipated, if these people are in there, then what's the result? I mean, it was after. You knew they were trying to intervene before the expert produced the report and all. That was well known for a couple of months at least. Well, they moved to intervene on November 18th, Your Honor. And at that point, we would have first had to serve discovery on them if they were permitted to intervene. We would have had to wait to receive the discovery, and it would have—we would have lost the trial date. And that's prejudice to the parties is losing the schedule that's in place. Walmart, as a litigant, has an interest in proceeding as quickly and as cost-effectively as it can. When do you anticipate this trial is going—this case will go to trial if there is no intervention? Well, the case was set for trial in September of this year, Your Honor, but there was a stay issued by this court on the application of the TPSA, and so the proceedings have been stayed in the district court. So, I mean— We were within one week of concluding discovery at the time that the stay was issued. So, there was one expert deposition and one fact deposition left to be taken. All that remained was summary judgment briefing. And I think the court—what happened after the TPSA moved to intervene is indicative of the kind of prejudice the district court noted in his experience, kind of an on-the-scene determination from the district judge, which is there were substantial disputes about discovery. They wanted to intervene but didn't want to provide any discovery, and that caused the schedule to have to be extended. So, I think the court has—is entitled to deference that is the appropriate standard of review and made a reasoned judgment that their intervention at the late date that it came would have prejudiced the orderly progression of the case and increased the burden and expense on the parties. If I turn back to adequacy, which I think is the basis on which the court can properly dispose of this appeal, as in Hopwood, as in Duncanville, and as in Ingerbretson, the school prayer cases and the affirmative action case where the court affirms the denial of a motion to intervene on adequacy grounds alone— What do you do with Wright and Miller? You know, Wright and Miller has said in cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interest of those who are governed by those schemes are sufficient to support intervention.  In Wright and Miller, you will see the circuit court cases from around the country on the question of interest are all over the map. In Wright and Miller, that statement doesn't explain many of the cases around the country on interest. There is a dispute among the circuits as to what's a sufficient interest, but what this court has said in the Nopsey decision is that a mere economic interest is insufficient and that in all the interest cases that I discussed that involve voting rights, direct government benefits, those are sufficient. But extension of an ordinance prohibiting distribution of liquor near schools creates a cognizable injury for the owner of the nightclub. Sorry, I didn't hear you. That's the Davidson v. the City of Clinton case. Yes. In the Davidson v. the City of Clinton case, though, Your Honor, there the court found expressly that as a result of the litigation, their permit, the effective rights to use the permit would be revoked. There is no circumstance here. All they're claiming, Your Honor, is they want someone else not to be able to get the permit they have. It is a mere economic interest. Because it will hurt their small business owners. They have a mom-and-pop small business owner argument. I'm not saying that I agree with that. That's their argument. I understand, Your Honor. But that is a purely economic interest, which is insufficient for intervention. In the Davidson case, the court said that effectively the regulation would void the permit. Here the permit, they could use the permit to the fullest extent authorized by law. Now, on adequacy, Your Honor, the other argument they point to is that the state has not made an argument about protecting small business, which is incorrect. The state has identified that argument, as the district court found in the record at page 479 to 494 in its contention interrogatories. And, indeed, the state made very similar arguments in its motion to dismiss. The state argued that the legislature may have been motivated by a desire to avoid discounting or price reductions and to avoid the alleged dangers of domination of retail establishments by economically powerful interests. That's record 104. That's the state's motion to dismiss. Now, it was, in fairness, in the context of an overall argument about temperance and restricting access to alcohol. But it shows the narrowness of this dispute. This is not a dispute about a different ultimate objective. What do you do about SB? I'm sorry? What do you do about SB? With respect to the interest question? Yes. SB, the court decides the interest question as a property right. It says there are property rights in existing contracts with the government. And, in fact, in Texas v. United States, this court described SB as an elementary case involving property rights, not a mere economic interest. I think that the government must represent the broad public interest, not just the economic concerns of the regulated industry, and found divergence of the interest between the government and the timber company interveners. Yes, but in SB, Your Honor, just like all the other cases in which this court has found adversity, the court noted that there was record evidence of adversity because the government agreed to apply the injunction in that case more broadly than was required. I thought that in Brumfield we said we don't have to—we can't say for sure that the state's more extensive interest will, in fact, result in inadequate representation. But they might. And so they don't have to show that the state has actually failed to represent them. They just have to allege that they might. Two points, Your Honor. In Brumfield, the court again found adversity, contrary positions. In Brumfield, the state conceded that the federal government had jurisdiction over the voucher program, whereas the parents, the proposed interveners, disputed that. That is the consistent line that runs through this Court's cases where the ultimate objective presumption is found rebutted, is that there is adversity. And with respect to whether it's maybe or they have to make a stronger showing, I would urge the Court to look at the en banc decision in City of Houston v. Edwards, where at the end of the Court's adequacy analysis, the Court says—the other point on Brumfield is the Court found neither presumption applied. So it's a different case where both presumptions apply. But in Edwards, the en banc Court said because both presumptions don't apply, we therefore resort to the lower standard of maybe. But where the presumptions do apply, this Court has said that a stronger showing is required. Okay, Mr. Kaplan. Thank you very much. Thank you, Your Honor. Thank you. Mr. Walter. You know, Mr. Walter, it kind of struck me that the District Court didn't allow this intervention. And it kind of had a grip on the thing. I mean, that's—this is a practical matter. It was a matter of delaying the trial. I mean, all the factors—it must have considered all of these factors, and the District Court is on the ground level, and a lot of these things are viewed better from the ground level than the appellate level. Not in these types of instances, Your Honor. Not for intervention. Because what you don't have to do is you don't have to consider a bunch of factors and circumstances that are unique to the trial level. You don't. What you can do is you can look at the facts the way they appear in the record, and that's all that matters. The problem here— The District Court clearly found it didn't need you. Yeah, the District Court doesn't— To straighten it out or to straighten the case out. No question that the District Court, in this particular instance, decided it didn't— And the case is going to trial in September. There's no telling when this case will go to trial now, if you were allowed to intervene. Well, whether it would have gone to trial in September or not, we don't know. But what we do know is a couple of things. One is the burden on the litigation, because of the intervention, if the intervention is proper as a matter of right under Rule 24, the burden on the litigation is not a relevant inquiry. Period. It's just not. Because when you have a right to intervene, you have a right to intervene. And what happens in the litigation after that happens. And so when they protest, when Wal-Mart protests, oh, it's going to delay the trial, it's going to do this, that is not relevant to a— An Avener can just throw a wrench in the trial litigation any time it wants to. Not any time, Your Honor. You have to do it at a time that it will not prejudice the existing parties up to that point. How long has this case been going on? It was filed in February of 2015. The state answered after the Rule 12b-6 on August 7, 2015. And the case really got started probably after the scheduling order was entered in October of 2015. And there were, as usual, there were extensions of the discovery deadlines as the case was moving forward. I mean, they say they've already filed volumes of documents and that they would have to look at again. Certainly you're going to have to look at them. You're going to have to ask for a lot of extended delays, and you're going to be discovered. So, I mean, your intervention in this case is going to delay the trial of this case 18 months at least, wouldn't you say? Well, I've got two points about that. Number one, it doesn't matter for Rule 24a intervention and by right. It does not matter if we're entitled to be in the case what the burden to the litigation is. But the second thing is a more practical answer, Your Honor. This is Walmart. It's the largest retailer in the world. They operated under this structure since 1975 in Texas. They've operated for 40 years. They've operated under the public corporation ban for over 20 years. And they finally decided that they wanted to attack it and do something about it. Walmart is not going to be prejudiced by having this litigation last as long as it needs to last. They will not suffer prejudice. The people that will suffer prejudice if they're not in and can't be heard are the package store holders who are going to lose their livelihoods if they're not allowed to be heard. Well, they say, I mean, the other side says nobody's going to lose their livelihood. I mean, that's not, I mean, you may be undercutting your prices, and your profits may go down, and I suppose those that are not healthy may fall by the wayside but probably would have anyway. I mean, this whole thing is not a matter of anything but competition to drive your prices down. It absolutely is, Your Honor, because the reality is they can say, oh, there's not going to be anything happen. Not now, but that's what they want to do. Walmart wants to come in and take this market. And they will come in and take a sizable piece of the market if they come in. They will. It's what they do, and we're going to prove that. When Walmart says, oh, this is not going to be any big deal, that's nonsense. You go to Fredericksburg, Texas, and you'll find that there are five package stores. There's also a Walmart Supercenter. And when that Walmart Supercenter starts acting as a package store, not one of those package stores in Fredericksburg, Texas, is going to survive. But let me tell you, Your Honor, that is why the court does not need to get into the weeds about that sort of thing at this point deciding this kind of issue. The question is whether we have an opportunity to be heard, not on whether we prove what they say is nonsense right now. The question is whether we have an opportunity to be heard, and that burden is minimal. Standard of review on two points that were just made. It is de novo on timeliness. There was no finding of timeliness with respect to Rule 24a by the district court, period.  It is de novo. It is not abuse of discretion. Second thing, standard of review. This Rule 24a has to be construed liberally and all doubts, all doubts, resolved in favor of intervention. And when that's done under these circumstances, the doubts need to be resolved in favor of our intervention. We need to be in. We ask the court reverse the order denying intervention and render an order that the PSA be allowed to intervene in this case. And we very much appreciate y'all's time. Thank you. Thank both sides for good arguments and assistance to the court.